IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GLENN SEED LTD., a Canadian corporation and
GREEN LEAVES, INC., a South Dakota corporation,

                    Plaintiffs,

    v.

JAMES A VANNET, a Minnesota individual,
TENDER LEAFY CORN, LLC, a dissolved Wisconsin
limited liability company and
TENDER LEAFY CORN, LLC, a Minnesota limited
liability company,

                  Defendants.

OPINION AND ORDER

09-cv-309-slc

---

      This is a civil action for monetary and declaratory relief.  Plaintiffs Glenn Seed Ltd. and Green Leaves, Inc. are suing defendants under several contract-related causes of action.  In response to plaintiffs' suit, defendants James Vannet, Tender Leafy Corn, LLC, Wisconsin (TLC Wisconsin) and Tender Leafy Corn, LLC, Minnesota (TLC Minnesota) have asserted contract-related counterclaims requesting monetary and declaratory relief.  Defendants have moved for summary judgment on plaintiffs' first cause of action seeking declaratory judgment that no agreement exists between plaintiffs and TLC Wisconsin regarding Glenn Seed's inbred lines of corn.  Dkt. 11.  Plaintiffs countered with a cross-motion for summary judgment on their first causes of action as well as on their second cause of action for declaratory judgment that no agreement exists between plaintiffs and TLC Minnesota regarding Glenn Seed's inbred lines of corn.  Dkt. 19.[1]   Jurisdiction is present.  28 U.S.C. § 1332(a)(3).

      For the reasons stated below, I am granting defendants' motion for partial summary judgment and denying both parts of plaintiffs' cross motion for summary judgment.

---

      [1] I will issue a separate order addressing plaintiffs' motion to dismiss defendants' counterclaims under Fed. R. Civ. P. 12(b)(1) and (6), dkt. 17.

From the parties' proposed findings of fact, I find the following facts to be material and undisputed:

FACTS

## I.  Parties

Plaintiff Glenn Seed Ltd. is a Canadian corporation with its principal place of business in Ontario, Canada.  Glenn Seed owns intellectual property rights to specific inbred lines of corn.  Plaintiff Green Leaves, Inc. is a South Dakota corporation with its principal place of business in Ontario, Canada.  Francis Glenn is the principal officer of Glenn Seed and the president of Green Leaves.  Defendant James Vannet is a citizen of Minnesota.  Defendant TLC Wisconsin is a Wisconsin limited liability company organized in 1997.  Vannet and Green Leaves are listed as TLC Wisconsin's only members.  (The parties dispute whether TLC Wisconsin still exists as a limited liability company.)  Defendant TLC Minnesota is a Minnesota limited liability company organized in 2005.  Vannet and Francis Glenn are listed as TLC Minnesota's only members.  (The parties dispute whether Glenn's signature as a member of TLC Minnesota was forged and thus, whether he is in fact a member.)

## II.  TLC Wisconsin

In the late 1990's, Francis Glenn contacted Vannet in an effort to obtain Vannet's services.  Specifically, Francis Glenn sought to establish a relationship with Vannet where Vannet would provide marketing and promotional services to companies licensing use of inbred lines of corn from Glenn Seed in an effort to promote leafy hybrids whose parents were Glenn Seed's inbred lines.  In 1997, Vannet and Green Leaves formed Tender Leafy Corn LLC (or TLC

2

Wisconsin) as equal members.  In 1998, Vannet and Green Leaves approved an operating agreement to govern the inner workings of TLC Wisconsin.  Relevant portions of the agreement are as follow:

> Article XIV, B: **Effect of Dissolution** - Upon dissolution, the Company shall cease carrying on as distinguished from the winding up of the Company business, but the Company is not terminated, but continues until the winding up of the affairs of the Company is completed and the Certificate of Dissolution has been issued by the Secretary of State.

> Article XIV, C: **Distribution of Assets on Dissolution** - Upon the winding up of the Company, the Company Property shall be distributed:

>> 1.  To creditors, including members who are creditors to the extent permitted by law,  in satisfaction of Company Liabilities;

>> 2.  To Members in accordance with positive Capital Account balances taking into account all Capital Account adjustments for the Company's taxable year in which the liquidation occurs.  Liquidation proceeds shall be paid within 60 days of the end of the Company's taxable year or, if later, within 90 days after the date of liquidation. Such distributions shall be in cash or Property (which need not be distributed proportionately) or partly in both, as determined by the Member-Managers.

> Article XIV, D: **Winding Up and Certificate of Dissolution -** The winding up of a limited liability company shall be completed when all debts, liabilities, and obligations of the limited liability company have been paid and discharged or reasonably adequate provision therefor has been made, and all the remaining property and assets of the limited liability company have been distributed to the members.  Upon the completion of winding up of the Company, a certificate of dissolution shall be delivered to the Secretary of State for filing.  The certificate of dissolution shall set forth the information required by the [Wisconsin Limited Liability Company Act].

In addition to the operating agreement, Glenn Seed orally granted TLC Wisconsin the sole right to market its inbred lines of corn in the Western Hemisphere in exchange for 50% of the royalties earned.  This oral grant of marketing rights did not include a term of duration or any provision regarding termination of the rights.

Between 1998 and 2005, TLC Wisconsin marketed Glenn Seed's inbred lines of corn to customers using license agreements.  TLC Wisconsin entered into 62 license agreements or written contracts with Glenn Seed and customers desiring to use the Glenn Seed inbred lines of corn.  TLC Wisconsin and Glenn Seed signed every license agreement.  Although each license agreement was created with a separate customer, all 62 agreements were identical in form.  All agreements stated that "**TENDER LEAFY CORN, LLC** (hereinafter called **TLC**) possesses, controls and has sole right to market THE INBRED LINES in the Western Hemisphere."

Pursuant to TLC Wisconsin's operating agreement, all marketing payments made by licensees pursuant to the license agreements were paid to TLC Wisconsin.  Payments were disbursed as follows:  as the owner of the inbred lines of corn, Glenn Seed received 50% of all royalties as a licensing fee; Vannet received 10% for his services; and the remaining 40% was used to pay expenses and any remaining money after expenses were distributed equally to the members of TLC Wisconsin.

On September 15, 2005, Vannet's wife, Debra, filed Articles of Dissolution with the Wisconsin Department of Financial Institutions for TLC Wisconsin.  (The parties dispute whether Francis Glenn or plaintiffs were informed of the filing of TLC Wisconsin's Articles of Dissolution.)  TLC Wisconsin never wound up its affairs.

### III.  TLC Minnesota

On September 22, 2005, Vannet filed Articles of Organization for TLC Minnesota with the Minnesota Secretary of State.  (Although the parties do not dispute that the signature purporting to be the signature of Francis Glenn is in fact not his signature, they do dispute whether he authorized the signing of his name.)  The Articles list James Vannet and Francis Glenn as members in their individual capacities.  (The parties dispute whether Francis Glenn consented to becoming a member of TLC Minnesota.)  There is no document transferring marketing rights regarding Glenn Seed's inbred lines of corn from TLC Wisconsin to TLC Minnesota.  Instead, in 2005, Vannet began administering the license agreements signed by TLC Wisconsin through TLC Minnesota.  Also, licensing agreements entered into after 2005 were administered and signed by Vannet as an agent of TLC Minnesota.

### IV.  Termination of Marketing Rights

(The parties dispute when Glenn Seed, Green Leaves and Francis Glenn first discovered that Articles of Dissolution for TLC Wisconsin had been filed and that Vannet had formed TLC Minnesota.)  On February 11, 2009, counsel for Glenn Seed and Green Leaves sent Vannet a letter demanding that Vannet cease all activities with respect Glenn Seed's inbred lines of corn. The letter stated in pertinent part:

> TLC has acted as a marketing agent for Glenn Seed with respect to certain inbred lines of corn of which Glenn Seed is the sole proprietary owner (the "Glenn Seed Inbred Lines").
>
> Our client has recently determined from a search of Wisconsin corporation records that TLC has been dissolved.  Enclosed is a copy of the Articles of Dissolution of TLC signed by you on September 14, 2005.

5

TLC was dissolved by you without the knowledge of our client who first became aware of this fact on January 16, 2009. Accordingly, TLC ceased to exist upon the filing of the Articles of Dissolution by you in September of 2005, at which time, all of TLC's rights with respect to Glenn Seed Inbred Lines terminated.

We have also recently determined from a search of Minnesota corporation records that you filed Articles of Organization in September 2005 for another Tender Leafy Corn LLC.  This was also done by you without our client's knowledge.  I also note from the Articles of Organization that the document filed by you wrongfully purports to have been signed by Francis Glenn. I am advised by Dr. Francis Glenn that this is not his signature.

Please be advised of the following:

1.    When TLC ceased to exist in September of 2005, any rights of TLC with respect to the marketing and distribution of the Glenn Seed Inbred Lines terminated;

2.    Glenn Seed and Green Leaves no longer require any assistance whatsoever from you with respect to the marketing and distribution of the Glenn Seed Inbred Lines or otherwise and you are to immediately cease all activities in that regard;

3.    As TLC is no longer a legal entity, and you are no longer an authorized representative of Glenn Seed, we expect you to immediately discontinue any communication whatsoever on behalf of TLC and Glenn Seed with any present or prospective customers and licensees of Glenn Seed.

6

ANALYSIS

**I.  Choice of Law**

The parties in this case assume in their briefs that Wisconsin law applies.  I will follow the parties' lead.  *FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 283 (7th Cir. 2002) (in absence of any discussion of choice of law issues by parties, court applies law of forum state).

**II.  Summary Judgment Standard**

Under Fed. R. Civ. P. 56, summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  In ruling on a motion for summary judgment, the admissible evidence presented by the nonmoving party must be believed and all reasonable inferences must be drawn in the nonmovant's favor. However, a party that bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires a trial.  *Hunter v. Amin*, ___ F.3d ___, 2009 WL 3127162 (7th Cir. 2009); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  The applicable substantive law will dictate which facts are material.  *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). The court's function in a summary judgment motion is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249; *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) .

### III.  Plaintiffs' First Cause of Action

Plaintiffs' first cause of action seeks a declaratory judgment that no agreement exists between plaintiffs and TLC Wisconsin regarding the Glenn Seed inbred lines of corn.  The parties have cross moved for summary judgment on this cause of action.  Plaintiffs contend that the February 11, 2009 letter sent to Vannet terminated the marketing rights that had been orally granted to TLC Wisconsin.  Defendants contend that TLC Wisconsin's marketing rights regarding the inbred lines of corn have not been terminated and that regardless whether the February 11, 2009 letter terminated the oral grant of marketing rights, TLC continues to maintain agreements with plaintiffs in all the licensing agreements that remain in effect.

The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  The test for determining whether a party may obtain declaratory relief is necessarily a general one: "'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  In other words, "[c]ases are unripe when the parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts."  *Hinrichs v. Whitburn*, 975 F.2d 1329, 1333 (7th Cir. 1992).  Whether TLC Wisconsin maintains any agreements with plaintiffs regarding the inbred lines of corn is not a hypothetical dispute but a concrete conflict.  Entitlement to future payments as well as the proper disbursement of

previous payments hinges on whether any such agreements exist.  Thus, providing a declaratory judgment would be proper in this case.

There are two issues that affect whether at the time this case was filed there were any agreements between plaintiffs and TLC Wisconsin: (1) whether the oral grant of marketing rights had been terminated and (2) whether any such termination would affect the individual license agreements entered into between TLC Wisconsin, Glenn Seed and third-party customers. With respect to the first issue, it is undisputed that the general grant to TLC Wisconsin of the sole right to market Glenn Seed's inbred lines of corn in the Western Hemisphere was an oral grant and that the grant was silent about duration.  Thus, the question remains whether the February 11, 2009 letter properly terminated the oral grant.

Plaintiffs characterize the oral grant of marketing rights as similar to an oral at-will employment contract with TLC Wisconsin.  In other words, it is as if Glenn Seed hired TLC Wisconsin to work for it by marketing and promoting its inbred lines of corn.  I agree that this is a fair and useful characterization.  Further, defendants do not provide any contrasting characterization of the relationship between Glenn Seed and TLC Wisconsin.  Defendants contend merely that the oral grant was an oral contract; this contention, however, does not address what type of contract the oral grant created.

"In general, at-will employees are terminable at will, for any reason, without cause and with no judicial remedy." *Bammert v. Don's Super Valu, Inc.*, 2002 WI 85, ¶8, 254 Wis. 2d 347, 353, 646 N.W.2d 365, 368.  In other words, under Wisconsin's employee-at-will doctrine, "an employer may discharge an employee-at-will 'for good cause, for no cause, or even for cause morally wrong, without being thereby guilty of legal wrong.'"  *Kempfer v. Automated Finishing,*

*Inc.*, 221 Wis. 2d 100, 108, 564 N.W.2d 692, 696 (1997) (quoting *Brockmeyer v. Dun &
Bradstreet*, 113 Wis. 2d 561, 567, 335 N.W.2d 834, 837 (1983)).  An at-will employee is an
employee who's employment is set for an indefinite term.  *Brockmeyer*, 113 Wis. 2d at 567, 335
N.W.2d at 837.

In this case, it is undisputed that the oral grant of marketing rights was silent about
duration, that is, it carried an indefinite term, and termination.  Using Wisconsin's law regarding
the employee-at-will doctrine as a guide, Glenn Seed was free to discharge TLC Wisconsin from
providing marketing and promotional services for any reason and at any time.  Glenn Seed did
just that.  In their February 11, 2009 letter, plaintiffs made clear that TLC Wisconsin's
marketing services were terminated when they said, "Glenn Seed and Green Leaves no longer
require any assistance whatsoever from you with respect to the marketing and distribution of the
Glenn Seed Inbred Lines or otherwise . . . ."  Amend. Cmplt., dkt. 32, exh. E at 1-2.  Although
the letter was sent to Vannet, he was running TLC Wisconsin and using TLC Wisconsin to
market the inbred lines of corn.  Thus, as of February 11, 2009, the marketing rights granted to
TLC Wisconsin were terminated.

Defendants contend that the marketing rights could not be terminated so easily because
there also were written grants of marketing rights.  Defendants are incorrect.  The written
licensing agreements do not *grant* TLC Wisconsin marketing rights.  Instead, the agreements
state that TLC Wisconsin *possessed* the marketing rights.  Amend. Answer, dkt. 44, exh. A at 1
("[TLC] possesses, controls and has sole right to market THE INBRED LINES in the Western
Hemisphere.").  The agreements explain to third-party customers the state of affairs between

10

TLC Wisconsin and Glenn Seed as of the signing of the agreement; they do not *grant* any marketing rights to TLC Wisconsin.

Even though the licensing agreements did not grant TLC Wisconsin any marketing rights, those agreements still created a contractual relationship between TLC Wisconsin, Glenn Seed and third-party customers.   Terminating TLC Wisconsin's marketing rights did not nullify the license agreements or contractual relationship between TLC Wisconsin and Glenn Seed.   In fact, the licensing agreements provide that they "may not be modified, amended, or cancelled, in whole or in part, except by written agreement signed by the parties[.]" *Id.*, dkt. 44, exh. A at 4 ¶15(c).   Plaintiffs do not contend that TLC Wisconsin agreed to the cancellation of any of the licensing agreements it entered into.   Thus, the February 11, 2009 termination of the marketing rights orally granted to TLC Wisconsin does not alter the licensing agreements entered into between TLC Wisconsin, Glenn Seed and third-party customers.

Nonetheless, if TLC Wisconsin no longer exists, as plaintiffs contend, then it cannot have any agreements with Glenn Seed.   Plaintiffs contend that TLC Wisconsin no longer exists because Articles of Dissolution were filed on its behalf on September 15, 2005.   But according to both TLC Wisconsin's operating agreement and Wisconsin's laws governing limited liability companies, TLC Wisconsin continues to exist until its affairs are wound up.   Amend. Cmplt., dkt. 32, exh. B, at 49, Art. XIV, B ("Upon dissolution, the Company shall cease carrying on as distinguished from the winding up of the Company business, but the Company is not terminated, but continues until the winding up of the affairs of the Company is completed and the Certificate of Dissolution has been issued by the Secretary of State."); Wis. Stat. § 183.0903 ("A dissolved limited liability company continues its legal existence but may not carry on

business except that which is appropriate to wind up and liquidate its business."). It is undisputed that TLC Wisconsin's affairs were never wound up, that is, its debts, liabilities, and obligations were never discharged and all the remaining property and assets were never distributed. Accordingly, TLC Wisconsin still exists and, based upon the facts presented on summary judgment, agreements in the form of licensing agreements still exist between TLC Wisconsin and Glenn Seed.

Based on the undisputed facts, the marketing rights that had been orally granted to TLC Wisconsin were terminated as of February 11, 2009. Nonetheless, TLC Wisconsin still exists as a business entity because its affairs have not been wound up, and nothing submitted by the parties refutes the existence of licensing agreements between TLC Wisconsin, Glenn Seed and third-party customers. Further, the licensing agreements clearly involve the use of Glenn Seed's inbred lines of corn. Therefore, plaintiffs are not entitled to a declaratory judgment that no agreement exists between plaintiffs and TLC Wisconsin regarding the Glenn Seed inbred lines of corn. Plaintiffs' motion for summary judgment on its first cause of action will be denied and defendants' cross motion for summary judgment will be granted.

## IV. Plaintiffs' second cause of action

Plaintiffs' second cause of action is identical to its first except the declaratory judgment they request relates to TLC Minnesota, as opposed to TLC Wisconsin. Plaintiffs contend that no marketing rights were ever granted to TLC Minnesota and that no marketing rights were ever transferred from TLC Wisconsin to TLC Minnesota. Defendants do not dispute plaintiffs' contention. Instead, in a footnote, defendants state that whether TLC Minnesota has any

12

contracts with plaintiffs is "subject to fact issues, making the claim inappropriate for summary judgment at this time." Defs' Reply Br., dkt. 25, at 8 n.6. This statement alone is not enough to dispute a motion for summary judgment, and defendants did not move under Fed. R. Civ. P. 56(f) for more time to do present facts essential to its opposition. Nonetheless, plaintiffs are not entitled to summary judgment unless the undisputed facts establish that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e)(2) ("If the opposing party does not so respond, summary judgment should, *if appropriate*, be entered against the party." (Emphasis added)).

At the summary judgment stage, I must assume that TLC Minnesota is not a fraudulent entity because the nonmoving party is entitled to have inferences drawn in its favor from the undisputed facts. TLC Minnesota was the party signing licensing agreements with Glenn Seed and third-party customers after TLC Wisconsin was dissolved in September 2005. Although TLC Wisconsin has remained in existence after its dissolution, its actions were limited during the winding up period. According to Wis. Stat. § 183.0903, TLC Wisconsin could "not carry on business except that which is appropriate to wind up and liquidate its business." Thus, it could not enter into any new contracts for future business.

It is undisputed that licensing agreements entered into after TLC Wisconsin's dissolution were signed by Vannet on behalf of TLC Minnesota. The parties dispute whether plaintiffs were aware of this change in parties. The licensing agreements list Tender Leafy Corn, LLC as a party without specifying which Tender Leafy Corn, LLC they are referring too –either TLC Wisconsin or TLC Minnesota. However, after TLC Wisconsin's dissolution, the address listed for Tender Leafy Corn on the licensing agreements was changed from a Wisconsin address to a Minnesota

13

address.  Because it is disputed whether plaintiffs knew that the Tender Leafy Corn mentioned in the licensing agreements entered into after September 2005 referred to TLC Minnesota, plaintiffs' are not entitled to summary judgment on their second cause of action.

If plaintiffs really were aware of the change in parties to the licensing agreements entered into after September 2005, then it is possible that plaintiffs have agreements with TLC Minnesota regarding the inbred lines of corn.  This dispute will have to be resolved at trial. Accordingly, I will deny plaintiffs' motion for summary judgment regarding their request for a declaratory judgment that no agreements exist between plaintiffs and TLC Minnesota with respect to Glenn Seed's inbred lines of corn.

ORDER

IT IS ORDERED that:

(1)    Plaintiffs' cross motion for partial summary judgment on their first and second causes of action, dkt. 19, is DENIED;

(2)    Defendants' motion for partial summary judgment on plaintiffs' first cause of action, dkt. 11, is GRANTED.

Entered this 3rd day of November, 2009.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

14