IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GLENN SEED LTD., a Canadian corporation and
GREEN LEAVES, INC., a South Dakota corporation,

                        Plaintiffs,

   v.

JAMES A VANNET, a Minnesota individual,
TENDER LEAFY CORN, LLC, a dissolved Wisconsin
limited liability company, and
TENDER LEAFY CORN, LLC, a Minnesota limited
liability company,

                        Defendants.

OPINION AND ORDER

09-cv-309-slc

---

As noted in previous orders, plaintiffs are suing defendants under several contract-related causes of action; in response, defendants have asserted contract-related counterclaims requesting monetary and declaratory relief. I granted defendants' motion for summary judgment on plaintiffs' first cause of action and denied plaintiffs' motion for summary judgment on their first and second causes of action. Dkt. 46 at 14. Still pending is plaintiffs' motion to dismiss defendants' counterclaims under Fed. R. Civ. P. 12(b)(1) and (6). Dkt. 17.

First, some procedural observations: the parties filed their submissions widdershins: first came motions for summary judgment, next a motion to dismiss, then amendments to the pleadings after the other motions came under advisal. Generally, in deciding a motion to dismiss, the court is limited to considering facts found in the pleadings and any attached written instruments. Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (court may consider attachments to a complaint without converting motion to dismiss into motion for summary judgment). However, my ruling on the parties' motions for summary

judgment, which was made using facts outside the pleadings, must be considered in addressing plaintiffs' motion to dismiss because that ruling is the law of this case. Under the law of the case doctrine, "a court ought not to re-visit an earlier ruling in a case absent a compelling reason such as manifest error or a change in the law, that warrants re-examination." *Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007). No compelling reasons are apparent here.

Further, after plaintiffs filed their motion to dismiss on August 31, 2009, but before the motion came under advisement on October 1, 2009, both parties filed amended pleadings, dkts. 31 and 32. Because plaintiffs filed an amended complaint, defendants filed yet another amended answer and counterclaim on October 19, 2009, after the motion to dismiss came under advisement. Thus, some of the allegations addressed in plaintiffs' initial brief on their motion to dismiss have been altered and new allegations have been added. Even though plaintiffs never had an opportunity to address defendants' new and altered allegations, I must consider them because defendants' amended answer and counterclaim constitute their operative pleading.

With the case's procedural position in mind, I turn to the merits of the motion to dismiss. I set out many of the facts in the summary judgment order, so I will not repeat them here. Instead, I will refer to relevant allegations from the pleadings as needed.

**I. Defendants' First Counterclaim**

In their first counterclaim, defendants seek a declaratory judgment that (1) the marketing rights regarding Glenn Seed's inbred lines of corn received from plaintiffs did not terminate when TLC Wisconsin filed articles of dissolution, (2) those marketing rights continue in full force and effect and (3) TLC Wisconsin continues in existence as a matter of law until its affairs

are wound up or the court determines that the rights have vested in TLC Minnesota. Plaintiffs contend that this counterclaim should be dismissed under Rule 12(b)(1) because it is moot.

Regardless whether the counterclaim was moot at the time the motion to dismiss was filed, it is now the law of this case that "the marketing rights that had been orally granted to TLC Wisconsin were terminated as of February 11, 2009" and that "TLC Wisconsin exists as a business entity because its affairs have not been wound up." Dkt. 46 at 12. Therefore, defendants cannot obtain a declaratory judgment that the marketing rights remain in effect. However, I have determined that TLC Wisconsin will remain in existence until its affairs are wound up and that the marketing rights were not terminated until February 11, 2009. Accordingly, defendants' first counterclaim will not be dismissed, but the law of this case will limit defendants' future success on this claim.

## II. Defendants' Second Counterclaim

Defendants' second counterclaim actually raises two separate causes of action. Defendants allege that Glenn Seed tortiously interfered with contracts and that the interference resulted in Glenn Seed being unjustly enriched. Plaintiffs contend that defendants' allegations fail to state a claim for either tortious interference or unjust enrichment claim. I disagree.

### A. Tortious interference with contract

Under Wisconsin law, tortious interference with a contract requires proof of these elements:

(1) The plaintiff had a contract or prospective contractual relationship with a third party;

(2) The defendant interfered with that relationship;

(3) The interference by the defendant was intentional;

(4) There was a causal connection between the interference and damages; and

(5) The defendant was not justified or privileged to interfere.

> *Briesemeister v. Lehner*, 2006 WI App 140, ¶48, 295 Wis. 2d 429, 452, 720 N.W.2d 531, 542.[1]

Plaintiffs contend that defendants' counterclaim fails as a matter of law because Glenn Seed was justified or privileged in any interference. Plaintiffs cite *Landess v. Borden, Inc.*, 667 F.2d 628 (7th Cir. 1981)(upholding defendant's interference as privileged), as dispositive on this matter. However, *Landess* is readily distinguishable from the circumstances of this case.

First, *Landess* involved a determination made on summary judgment, not a motion to dismiss. 667 F.2d at 630. Motions for summary judgment are based on undisputed facts and require the party opposing the motion to provide "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Motions to dismiss focus on allegations in the pleadings and those allegations need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Therefore, the Seventh Circuit's decision in *Landess* regarding whether the defendant's interference had been privileged or justified was based on a more developed factual record than we have in this case.

---

[1] As before, the parties assume in their briefs that Wisconsin law applies, so I will follow their lead. *FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 283 (7th Cir. 2002). Defendants cite Minnesota law in footnotes, *see* Defs' Opp. Br., dkt. 28, at 5 nn.3 & 4, but they do so only to show that Minnesota law is "exactly the same" as Wisconsin law. Thus, as the forum state, Wisconsin law applies. *Crichton v. Golden Rule Insurance Co.*, 576 F.3d 392, 397 n.1 (7th Cir. 2009).

Second, in *Landess*, the contracts between the plaintiff and third-parties were implied, terminable at-will contracts as opposed to written contracts terminable upon the happening of a specific event. This difference matters because the court of appeals noted that with implied, at-will contracts there can be no tortious interference "[i]f the facts of [the] particular case do not give rise to a presumption that the contract will continue." 667 F.2d at 631. Here, the licensing agreements are not terminable at will; by their terms, they cannot be "cancelled, in whole or in part, except by written agreement signed by the parties[.]" Amend. Answer, dkt. 44, exh. A at 4 ¶15(c). Thus, unlike the implied contracts in *Landess*, there is a presumption that the licensing agreements will continue.

Finally, it is not clear from the allegations in the pleadings that defendants' relationship with third-party licensees was comparable to the relationships in *Landess* where "[t]he vitality of Landess' relation with the [third-party] farmers depended on the continuation of Landess' agreement with Borden and on the continuation of Borden's agreement with the farmers." 667 F.2d at 632. Plaintiffs contend that defendants' relationship with the licensees depended on their possession of marketing rights, which may turn out to be true; it is not clear, however, that this is true as a matter of law. Although defendants' relationship with the licensees stemmed from their use of the rights to market Glenn Seed's inbred lines of corn, nothing in the license agreements or the allegations in the pleadings suggests that once those marketing rights were terminated, defendants no longer were entitled to collect royalties for the license agreements they had previously brokered. Based on the factual allegations in the pleadings, it is plausible that the vitality of defendants' written contracts with licensees does *not* depend on their continued possession of marketing rights to the inbred lines of corn. So, although *Landess* is

5

relevant to this case, its application in determining whether Glenn Seed was privileged in any interference is best suited to summary judgment, after discovery has fleshed out the relevant facts.

Given the law of this case and accepting defendants' well-pleaded facts as true, as I must, defendants state a plausible claim for relief under a theory of tortious interference with contract. *Iqbal*, 129 S. Ct. at 1949-50.  I have found that the that licensing agreements "created a contractual relationship between TLC Wisconsin, Glenn Seed and third-party customers." Dkt. 46 at 11.  Defendants allege that Glenn Seed has interfered with the contractual relationships between TLC Wisconsin and third-party customers by "requesting the Licensees to execute new License Agreements" to which TLC Wisconsin was not a part.  Amend. Answer, dkt. 44, at 6 ¶22.  Defendants also allege that by asking licensees to enter into these new license agreements, Glenn Seed caused "significant confusion . . . regarding forward payment procedures of the royalties under the [original] License Agreements . . . [which] resulted in reduced earnings to TLC Wisconsin and/or TLC Minnesota . . . ." *Id.*, dkt. 44, at 9 ¶32.  These allegations allow a reasonable inference that Glenn Seed asked licensees to breach those licensing agreements that included defendants by entering into new licensing agreements where all royalties are paid directly to Glenn Seed as opposed to defendants.  Accordingly, defendants state a claim for tortious interference with a contract.

**B.  Unjust enrichment**

Defendants' unjust enrichment claim arises under a quasi-contract theory, which provides equitable relief, as opposed to a breach of contract claim, which involves an actual contract and

6

provides legal relief. *Watts v. Watts*, 137 Wis. 2d 506, 530, 405 N.W.2d 303, 313 (1987). In fact, claims brought under a quasi-contract theory like unjust enrichment arise when there is no agreement or contract between the parties but one party received a benefit from the other without paying for that benefit. *Id.* It is no surprise that contract lawsuits often include claims for unjust enrichment as a safety net. Under Fed. R. Civ. P. 8(e)(2), a party can plead alternative theories of relief under both legal and equitable grounds, even if the theories are inconsistent. *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003). Pleading in the alternative allows a party "to plead breach of contract, or if the court finds no contract was formed, to plead for quasi-contractual relief in the alternative. Once a valid contract is found to exist, quasi-contractual relief is no longer available." *Id.*

Following this path, defendants claim both breach of contract and unjust enrichment. Defendants have alleged facts that make plausible their claim that Glenn Seed breached the licensing agreements. Defendants' unjust enrichment claim stems from the same alleged conduct, namely that Glenn Seed wrongfully retained the entire benefit of the licensing agreements. Although defendants cannot recover on both claims, they are allowed to plead both. Accordingly, the unjust enrichment claim will not be dismissed at this point.

### III. Defendants' Third Counterclaim

Plaintiffs contend that defendants' counterclaim for Green Leaves's alleged breach of its fiduciary duty as a member of TLC Wisconsin should be dismissed under Rule 12(b)(6) because "defendants fail to allege any actions on the part of Green Leaves that could have plausibly constituted a breach of fiduciary duty." In their counterclaim, defendants allege that Green

Leaves "acting by itself and through its agent Glenn Seed" has violated Wis. Stat. § 183.0402 by willfully failing to deal fairly with TLC Wisconsin in administering the license agreements and by seeking or obtaining personal profit "from its actions above described relating to . . . the License Agreements." Amend. Answer, dkt. 44, at 10, ¶¶37-38. Plaintiffs contend that the allegedly improper action taken with respect to the licensing agreements was taken solely by Glenn Seeds, not Green Leaves, and that "[t]here is not a shred of factual evidence that an agency relationship existed between Green Leaves and Glenn Seed." Plts' Br., dkt. 18, at 13. Although this may turn out to be the case, at the dismissal stage, defendants are not required to prove the alleged agency relationship, they need only *allege* facts that make plausible their right to relief. Defendants have provided such allegations.

      The pleadings allege, and it was undisputed at summary judgment, that Green Leaves has been working with Glenn Seed and that the entities share the same president, Dr. Francis Glenn, who acts as an agent of both entities. Attached to the pleadings, and also undisputed on summary judgment, is the February 11, 2009 letter terminating TLC Wisconsin's marketing rights. The letter was sent from an attorney acting as legal counsel for both Glenn Seed and Green Leaves and the letter does not differentiate between the two entities but refers to "our client." The fact that Green Leaves has teamed up with Glenn Seed, an entity that allegedly has breached contracts with TLC Wisconsin and allegedly interfered with contracts to which TLC Wisconsin is a party provides "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" a breach of fiduciary duty by Green Leaves. *Twombly*, 550 U.S. at 556; *see also Riley v. Vilsack*, ___ F. Supp. 2d ___, 2009 WL 3416255, at *10 (W.D. Wis. Oct. 21, 2009) (J. Crabb) (using Fed. R. Civ. P. 11 as a guide in addressing a motion to dismiss and

8

explaining that "a complaint should include enough facts to suggest that the plaintiff has reasonable grounds to believe that discovery will lead to evidence that the defendant may be held liable for a particular violation of the law[.]")

Discovery might show that in Green Leaves's relationship with Glenn Seed, Green Leaves failed to act to prevent Glenn Seed from unilaterally and improperly terminating licensing agreements with TLC Wisconsin, or that Green Leaves derived an improper profit from the new licensing agreements. Such acts or failures to act might violate Wis. Stat. § 183.0402. Accordingly, defendants have stated a claim for breach of fiduciary duty against Green Leaves. This is enough to survive dismissal.

ORDER

IT IS ORDERED that plaintiffs' motion to dismiss defendants' counterclaims, dkt. 17, is DENIED.

Entered this 21st day of December, 2009.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge